IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RUDY MAMARIL,

    Petitioner,                          No. CIV S-10-1431 CHS

   vs.

GARY SWARTHOUT, Warden,

    Respondent.                      ORDER

                                  /

## I. INTRODUCTION

Petitioner Mamaril, a state prisoner, proceeds pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner stands convicted of conspiracy to sell rock cocaine in the Sacramento County Superior Court, case number 06F08729, for which he is currently serving an indeterminate prison term of 28 years to life. This matter is submitted for decision and the parties have consented to jurisdiction by United States Magistrate Judge.

## II. BACKGROUND[1]

On September 23, 2006, petitioner's friend and co-defendant, Murray Stanford, was arrested on unrelated charges. While Stanford was in jail expecting transfer to prison, a

---

[1] *See People v. Mamaril*, No. C058468, 2009 WL 1177057 (Cal. Ct. of App. 3rd Dist. May 4, 2009).

1

scheme was devised to raise money for Stanford's prison account. Petitioner and Taneshia Carter were to sell drugs obtained from Stanford's associates and put a share of the proceeds on Stanford's books. The conspirators discussed and implemented the scheme in part through coded conversations at the jail which were recorded. Mamaril and Carter obtained rock cocaine and sold it in furtherance of the conspiracy.

On October 5, 2006, Carter was arrested on an unrelated conspiracy to sell rock cocaine (different from that she engaged in with Stanford and petitioner). In exchange for pleading guilty to that unrelated charge and testifying truthfully against Stanford and petitioner regarding their rock cocaine conspiracy, Carter received a maximum sentence of one year in county jail and five years of probation.

Stanford and petitioner were charged as co-defendants with conspiracy to sell rock cocaine. At trial, the prosecution played the taped jail conversations and furnished transcripts to the jury. Carter testified regarding their contents. Neither co-defendant testified. A jury convicted both of conspiracy.

In a bifurcated proceeding, the court found true for enhancement purposes that petitioner had incurred two prior convictions within the meaning of California's "three strikes" law (*see* Cal. Penal Code §§ 667(b)-(i), 1170.12(a)-(d)) and that he had served three prior prison terms. A aggregate indeterminate "three strikes" sentence of 26 years to life was imposed, consisting of one term of 25 years to life for the conspiracy plus a consecutive one year term for the first prior prison terms. Sentencing on the other two prior prison term enhancements was stayed.

On appeal, the California Court of Appeal, Third District, affirmed the judgment but remanded for sentencing, finding that the trial court lacked discretion to stay sentencing on petitioner's second and third prior prison terms. On remand, an increased sentence of 28 years to life was imposed. A petition for review to the California Supreme Court was denied. Petitioner sought habeas corpus relief in state court where relief was likewise denied.

### III.  GROUNDS FOR RELIEF

Ground One:  Insufficient evidence supports the conspiracy conviction.

Ground Two:  The trial court erred by not striking the punishment for the second and third prior prison terms alleged as enhancements.

Ground Three:  The trial court erred by refusing to exercise its authority under state law to "strike" a prior strike conviction and counsel rendered ineffective assistance on this point.

Ground Four:  Petitioner attempts to "join" in all arguments raised by co-defendant Stanford in Stanford's federal petition for writ of habeas corpus.

### IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)). This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999).  Under AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

This court looks to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the

cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), *cert. dismissed*, 538 U.S. 919. If not rebutted with clear and convincing evidence, the state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1); *Taylor v. Maddox*, 336 F.3d 992, 1000 (9th Cir. 2004). It is the habeas corpus petitioner's burden to show the state court's decision was either contrary to or an unreasonable application of federal law. *Woodford v. Visciotti*, 537 U.S. 19, 123 S. Ct. 357, 360 (2002).

## V.  DISCUSSION

### A.  Ground One: Sufficiency of the Evidence

Petitioner claims that insufficient trial evidence supports his conviction for conspiracy to sell rock cocaine. In particular, petitioner argues the prosecution failed to prove that he entered into an agreement to commit the charged object of the conspiracy with the requisite specific intent.

The Due Process Clause protects an accused against conviction except upon proof beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970). On habeas corpus review, sufficient evidence supports a conviction so long as, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); s*ee also Prantil v. California*, 843 F.2d 314, 316 (9th Cir. 1988) (per curiam). The focus under *Jackson* is not the correctness, but rather, the reasonableness of the state judgement. *See Hurtado v. Tucker*, 245 F.3d 7, 19 (1st Cir. 2001).

The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Davis v. Woodford*, 384 F.3d 628, 639 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 319.) The dispositive question is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 318). Under the

AEDPA, this standard is applied with an additional layer of deference. *Juan H. v. Allen*, 408 F.3d 1262, 1274-75 (9th Cir. 2005). The relevant question is "whether the decision of the California Court of Appeal reflected an 'unreasonable application of' *Jackson* and *Winship* to the facts of this case." *Id*. (citing 28 U.S.C. § 2254(d)(1)).

Accepting the court of appeal's interpretation and application of state law regarding the elements of the offense, as this court is required to do (*see Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus")), the record evidence reasonably supports a finding that petitioner was guilty of conspiracy to sell rock cocaine.

Under California law,

> "Criminal conspiracy is an offense distinct from the actual commission of a criminal offense that is the object of the conspiracy." (*People v. Morante* (1999) 20 Cal.4th 403, 416 (*Morante* ).) Therefore, the People do not have to prove that the defendants committed the crime that was the object of the conspiracy. (*Id.* at pp. 416-417.)
>
> The People... do not have to prove that any particular conspirator committed any particular overt act, because ""'the act of one [conspirator] is the act of all.'"" [Citations.]" (*Morante, supra,* 20 Cal.4th at p. 417.)

*People v. Mamaril*, *supra*, at 7.

To convict petitioner of the offense of conspiracy, the prosecution was required to prove:

1. The defendant intended to agree and did agree with the other defendant or Taneshia Carter to sell, furnish, transport or offer to sell, furnish transport or attempt to sell, furnish or transport cocaine base;

2. At the time of the agreement, the defendant and the other alleged members of the conspiracy intended that one or more of them would sell, furnish, transport or offer to sell, furnish, transport or attempt to sell, furnish or transport cocaine base;

5

  3. One of the defendants or Taneshia Carter committed at least one of the following overt acts to sell, furnish, transport, or offer to sell, furnish or transport or attempt to sell furnish or transport cocaine base: on or about and between September 23, 2006 and October 3, 2006: Overt act 1: Murray Stanford directed Rudy Mamaril to pick up his work;[2] Overt act 2: Rudy Mamaril picked up cocaine base for Murray Stanford; Overt act 3: Rudy Mamaril brought cocaine base to Taneshia Carter; Overt act 4: Murray Stanford called Taneshia Carter from jail and discussed selling cocaine base; Overt act 5: Taneshia Carter sold cocaine base for Murray Standford;

  AND

  4. At least one of these overt acts was committed in California.

(Clerk's Transcript ("CT") at 869; *see also* CALCRIM No. 415.) The jury was so instructed. (Reporter's Transcript ("RT") at 1286-87.)

  The jury was also instructed that if the crime of conspiracy was committed, then Taneshia Carter was an accomplice as a matter of law; that a defendant cannot be convicted solely on the uncorroborated testimony of an accomplice; and that an accomplice's testimony should be viewed with caution (RT at 1280-81). Further,

> You may use the testimony of an accomplice to convict the defendants only if:
>
> 1. The accomplice's testimony is supported by other evidence that you believe;
>
> 2. That supporting evidence is independent of the accomplice's testimony;
>
> AND
>
> 3. That supporting evidence tends to connect the defendants to the commission of the crime.
>
> Supporting evidence, however, may be slight. It does not need to be enough, by itself, to prove that the defendant is guilty of the charged crime, and it does not need to support every fact about which the witness testified. On the other hand, it is not enough if

---

[2] Carter testified that "work" means rock cocaine on the street. (RT at 276.)

>    the supporting evidence merely shows that a crime was committed
>    or the circumstances of its commission. The supporting evidence
>    must tend to connect the defendant to the commission of the crime.

(CT at 861; RT at 1281.)

Here, the evidence established that petitioner entered into an intentional agreement to furnish, transport, and sell rock cocaine and that at least one conspirator committed at least one of the charged overt acts. Carter testified that she engaged in a series of telephone conversations with Stanford and petitioner in which arrangements were made for petitioner to pick up rock cocaine belonging to Stanford and deliver it to Carter to sell. (RT at 274-76, 293.) Carter testified that she was to put half of the money received on Stanford's prison books for commissary. (RT at 275, 293, 306.) Carter testified that petitioner delivered rock cocaine to her on two occasions. (276-77, 280, 292.)

Carter's testimony about the conspiracy was corroborated by the tape recorded jail conversations. In those, Carter identified her voice and the voices of petitioner and Stanford and translated various code terms they used. Several of the telephone calls were "three-way" calls, in which three parties could talk and hear each other at once.

In one conversation, Carter and the defendants discussed the fact that "the little broad in apartment two" (Maresha) had petitioner's "work" (rock cocaine); in another, Stanford directed Resha (Maresha) and to give "that shit" (rock cocaine) to Carter and petitioner and then directed petitioner to "dump it for me" (sell it). (RT at 302; CT at 899, 901-21.) Multiple other conversations between Stanford and Carter referenced the sale of drugs and/or putting money on Stanford's books. (RT at 326-31, 333-34, 336-38, 347-52, 354-62, 392-93, 398-99; CT at 933-36, 338-39, 940-47, 949, 953-55, 963-65.) Carter relayed to Stanford that petitioner had obtained rock cocaine from Maresha and had given it to her, that she had sold it, and that she was going to put $40 on Stanford's books. (RT at 331; 354-47; CT at 928-32; 949.) A note handwritten by petitioner that was found in Carter's apartment provided further corroboration of the existence of the conspiracy. (RT at 286-87; 656.)

7

1     Considering this evidence, the state court reasoned:

> Construing the evidence most favorably to the judgment, at Stanford's behest Mamaril agreed to pick up drugs from at least one person who was holding them for Stanford and to deliver them to Carter, and thereafter did so. The jury could reasonably have inferred that Mamaril acted thus with the specific intent of furthering Stanford's scheme-especially since the record does not suggest any other reason why Mamaril would have agreed to get illegal drugs from an acquaintance of Stanford and pass them on gratis to another acquaintance of Stanford whom Mamaril knew to be a dealer in such drugs.

*People v. Mamaril*, *supra*, at 10. And also:

> Carter's testimony was not uncorroborated. It was strongly corroborated by the conspirators' recorded conversations and by the investigating officers' opinions, including definitions of the conversations' key terms independently derived from the officers' training and experience, that the conversations concerned drug dealing; it was also corroborated by the fact that a note fitting Carter's description of the note left by Mamaril was found in her apartment. Corroboration of an accomplice's testimony need not confirm every point therein: it need only "'"substantiate[ ] enough of the accomplice's testimony to establish his credibility [citation omitted]."'" (*Rodrigues, supra,* 8 Cal.4th at p. 1128, quoting *Bunyard, supra,* 45 Cal.3d at pp. 1206-1207.) The recordings showed a consistent pattern of conduct by defendants and Carter over the period alleged in the information, which jibed with her narrative. The officers' opinions corroborated Carter's accounts of the conversations and their terminology. Lastly, Mamaril's note was physical evidence that bore out Carter's testimony on that point and helped tie him into the conspiracy. Thus, this evidence collectively established Carter's credibility. This was sufficient corroboration.

*People v. Mamaril*, *supra*, at 9.

    The state court's rejection of petitioner's sufficiency of the evidence claim is consistent with, and a reasonable application of the relevant *Jackson* standard set forth above. Petitioner is not entitled to relief.

        B.    Ground Two: Prior Prison Terms as Sentence Enhancements

    As set forth, the information alleged, and the jury found true, that petitioner had incurred three prior convictions. At sentencing, the trial court used the prior strike convictions to

8

impose an indeterminate life term for the conspiracy offense.  An additional year was imposed for one of the prior prison terms and the sentence for the other two prior prison terms was stayed.  On appeal, the California Court of Appeal held that the trial court lacked authority to stay the prison terms:

> "Section 667.5(b) provides for an enhancement of the prison term for a new offense of one year for each 'prior separate prison term served for any felony,' with an exception not applicable here.... *Once the prior prison term is found true within the meaning of section 667.5(b), the trial court may not stay the one-year enhancement, which is mandatory unless stricken.*" (*People v. Langston* (2004) 33 Cal.4th 1237, 1241 (*Langston*), italics added.)
>
> Because the trial court lacked authority to stay sentence on Mamaril's second and third prior prison terms, we shall remand the matter with directions that the court resentence in keeping with *Langston, supra,* 33 Cal.4th at page 1241.

*People v. Mamaril*, *supra*, at 11.

On remand, in accordance with the court of appeal's direction, the trial court sentenced petitioner to two additional one year terms for the other two prior convictions. Petitioner claims here that the trial court erred in violation of his right to due process by not striking the second and third prior prison terms.

This challenge to the application of state sentencing law fails to present a federal question for which relief is available. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991).  Absent fundamental unfairness, federal habeas corpus will not lie to correct a state court's misapplication of its own sentencing laws. *Middleton v. Cupp*, 768 F.2d at 1085; s*ee also Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1989) (petitioner not entitled to habeas corpus relief on claim that state court improperly used prior federal offense to enhance punishment); *Miller v. Vasquez*, 868 F.2d 1116, 1118-19 (9th Cir. 1989) (claim that prior conviction was not a "serious felony" under California sentencing law not cognizable in federal habeas corpus proceeding).  No relief can be granted on this claim.

/////

1         C.      Ground Three: Prior Strikes as Sentence Enhancements

In a similar claim, petitioner contends that the trial court made another error of state law by not "striking" one of his prior strike convictions prior to sentencing. In the alternative, petitioner contends that trial counsel rendered ineffective assistance of counsel regarding this issue.

On direct appeal, the state appellate court rejected these contentions:

> Mamaril contends that the trial court abused its discretion by denying his request under section 1385 to strike his 1992 robbery conviction in the interest of justice. Anticipating that we might find the issue forfeited because trial counsel acknowledged that defendant "did not fall strictly within the guidelines of *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*) and *People v. Williams* (1988) 17 Cal.4th 148 (*Williams*)," defendant further contends that this concession was ineffective assistance of counsel. We conclude that the court did not abuse its discretion and counsel was not ineffective.
>
> Counsel argued that the trial court should strike Mamaril's 1992 robbery conviction, thus reducing his record for sentencing purposes from two strikes to one, because he played a smaller role in the present offense than did Stanford or Carter; to imprison him for 25 years to life would be disproportionate to his conduct and would constitute disparate treatment compared to Carter's one-year sentence. Instead, the court should impose the upper term, doubled for Mamaril's remaining strike, and enhance the sentence for his prior prison terms, producing a total term of eight or nine years.
>
> The prosecutor replied that Mamaril was a longtime constant lawbreaker who violated parole every time he obtained it.
>
> The trial court denied the request to strike the prior strike, finding (1) Mamaril, now 37 years old, had been out of custody only briefly in the last 17 or 18 years; (2) every time he got out on parole, he would immediately violate parole and go back to prison; (3) though he had somehow obtained a full-time job, he allowed himself to be drawn into Stanford's scheme; and (4) as defense counsel had admitted, there was no basis for a *Romero* motion because Mamaril fell "squarely within the zone of three strikes."
>
> When the trial court exercises its discretion not to strike a prior strike, we will reverse for abuse of discretion only if the defendant shows that the court's decision was "so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) In this context, that could mean only that the court was not aware of its discretion to strike a strike or

> used impermissible factors in refusing to do so. (*Id.* at p. 378.) The court may properly strike a strike only if it finds that the defendant is outside the spirit of the three strikes law, which would be a truly extraordinary finding where the defendant is a career criminal. (*Ibid.; People v. Williams* (1998) 17 Cal.4th 148, 161.)
>
> Mamaril has not shown that the trial court lacked awareness of its discretion or used impermissible factors in making its ruling. Instead, he asserts that because another trial court exercised its discretion to strike a strike in another case on dissimilar facts, it must have been arbitrary and irrational for the court to refuse to do so here. This conclusion simply does not follow.
>
> Likewise, Mamaril offers no reason why he should be found outside the spirit of the three strikes law. He asserts that he had "demonstrated an intent to turn his life around" because he was employed and "in compliance with his parole." However, the trial court noted that Mamaril was employed, yet fell right back into his recidivist habits as soon as his old friend and fellow career criminal sought him out. And to claim that he was in compliance with his parole at the very time he was conspiring to sell rock cocaine is self-evidently absurd.
>
> Finally, trial counsel was not ineffective for failing to make a *Romero/Williams* argument. As the trial court found, such an argument would plainly have been insupportable. Trial counsel need not make meritless arguments merely to avoid being called ineffective by appellate counsel. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1038.)

*People v. Mamaril*, *supra*, at 11-12.

Like the claim rejected in the previous subsection, petitioner's contention that the trial court abused its discretion by not striking his prior strikes is an issue of state law that fails to present a cognizable federal claim. *Estelle*, 502 U.S. at 67. His contention that counsel rendered ineffective assistance is also without merit.

To demonstrate a denial of the Sixth Amendment right to the effective assistance of counsel, a petitioner must establish that counsel's performance fell below an objective standard of reasonableness, and that he suffered prejudice from the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 690 (1984). Prejudice is found where there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* Under 2254(d), the relevant question is not whether counsel's

11

actions were reasonable, but rather, whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard. *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

Petitioner fails to demonstrate deficient performance or prejudice. The trial court had discretion to strike petitioner's enhancing prior serious felony convictions pursuant to the holding of the California Supreme Court in *People v. Superior Court (Romero)*, 13 Cal.4th 497, 529-30 (1996). As the state court explained, however, the trial court cannot properly exercise that discretion where the defendant is a career criminal or otherwise not outside the "spirit" of the three strikes law, the purpose of which is to punish more harshly habitual offenders. *People v. Williams*, 17 Cal.4th 148, 161 (1998). In particular, a court must consider whether,

> in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character and prospects, the defendant may be deemed outside the scheme's spirit, in whole or part, and hence should be treated as though he has not previously been convicted of one or more serious and/or violent felonies.

*Id*.

In addressing petitioner's background, the trial court observed:

> [O]ne of the things that's pretty evident is that when you look at Mr. Mamaril's, you know, juvenile history, as well as adult history, you know, he – he's been out of custody for the last, you know 17, 18 years for a very brief period of time.
>
> And that was one thing that was evident... is how the defendant would literally get out of custody, um, on parole, to a region and he would essentially turn right back around and go right back to prison.
>
> But I think it's [evident] that at some point, you know, someone took a chance on him and gave him a job. I believe he was working security and driving a shuttle for Best Western...
>
> My hope would have been at that point he would have realized that, you know, he had an opportunity that a lot of inmates just simply don't get.
>
> ...
>
> No – and I know Mr, Stanford is – is a good buddy. He's – he's

one of your – your very good friends.  Um, but you got dragged back into something, you know, quite frankly that you didn't have to get involved in because you had some good indicators working for you.

At the very least you had a job and you were gainfully employed, which was a little bit more than you could say for Mr. Stanford, who was essentially – you know, had one job at that time and he was out on the streets, you know, doing his thing.

And so that the hope would have been that you would have stayed out of this mess but you didn't do that, and that's what brings you before this Court.

And you know, quite frankly, [defense counsel] actually hit it on the head when he, you know, said there's really no need to file a – a motion under 1385 or People versus Romero and it's progeny because, you know, this is – this is just sort of a case that stands out.

And [defense counsel] is absolutely correct.  You don't fall within that.  You fall squarely within the zone of three strikes.  There's no way that anyone could argue that you're outside the zone of three strikes.  I mean, you're squarely within that zone.

And it's kind of a shame because you're young, 37.  Like I said, you had an opportunity.  You had a job at least.  And then you kind of got pulled right back in and – and just feeling like you wanted to help a person out.  You did and now you're going to suffer the consequences for it.

(RT at 1433-36.)

The trial court's statement regarding petitioner's background makes clear that regardless of defense counsel's tactics or strategy, the court would not have exercised the discretion to strike prior convictions for sentencing purposes.  Counsel's performance was not deficient. *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) ("[T]he failure to take a futile action can never be deficient performance.")  Nor is prejudice shown; there is no reasonable probability that the result of the proceeding would have been different had counsel handled the matter differently. *Strickland*, 466 U.S. at 687-88.

/////

/////

D.  Ground Four: Attempt to "Join" in Co-defendant Stanford's Claims

For his final claim, petitioner indicates that he wishes to "join" in all arguments made by his co-defendant Stanford in Stanford's federal petition for writ of habeas corpus. The court is aware of the petition of Murray Stanford, Case No. CIV S 10-438 FCD DAD. Petitioner's case and that of his co-defendant Stanford are related under Local Rule 123(a). Local Rule 123(a) merely has the result of assignment to the same judge(s),[3] however; there has been no consolidation of the actions.

It is noted that co-defendant Stanford's petition for writ of habeas corpus raises no claims that are potentially applicable to petitioner and not already addressed herein. In any event, it is petitioner's burden, not that of his co-defendant, to demonstrate petitioner is in custody in violation of the Constitution. *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002). Allegations of fact are required. *Brown v. Allen*, 344 U.S. 443, 458, n.6 (1953) (overruled on other grounds in *Townsend v. Sain*, 372 U.S. 293 (1963)); *see also James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief."). Petitioner fails to meet this burden with allegations that he wishes to join in claims presented by his co-defendant in a habeas corpus petition filed on his co-defendant's behalf.

VI.  CONCLUSION

For all the foregoing reasons, the application for writ of habeas corpus is hereby DENIED.

DATED: July 11, 2011

_Charlene H. Sorrentino_
CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE

---

[3] As noted, in this case, the parties have consented to jurisdiction by United States Magistrate Judge; the parties in Case No. CIV S 10-438 FCD DAD did not.